# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

VIRGINIA FUGATE,                )
and CHARLENE WIND,              )
                                )
Plaintiffs,                     )
                                )
vs.                             )    NO. 3:10-CV-344
                                )
DOLGENCORP, LLC,                )
and DOLLAR GENERAL              )
CORPORATION,                    )
                                )
Defendants.                     )

## OPINION AND ORDER

This matter is before the Court on: (1) Defendants' Motion for Summary Judgment as to Plaintiff Charlie Wind (DE# 57), filed on May 15, 2012; (2) Defendants' Motion for Summary Judgment as to Plaintiff Virginia Fugate (DE# 60), also filed on May 15, 2012; (3) Defendants' Motion to Strike Declarations Attached to Plaintiffs' Response in Opposition to Summary Judgment (DE# 73), filed on June 29, 2012; and (4) Motion to Strike the Declaration of Alison Ulmer (DE# 78), filed by Plaintiff, Virginia Fugate, on July 13, 2012. For the reasons set forth below, Defendants' motions for summary judgment (DE## 57, 60) are **GRANTED**. Both motions to strike (DE## 73, 78) are **DENIED as moot**. Accordingly, this case is dismissed.

BACKGROUND

Plaintiffs, Virginia Fugate and Charlene Wind, filed suit against their former employer, Defendants, Dolgencorp, LLC and Dollar General Corp. (collectively "Dollar General"), alleging they were discriminated against based on their age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 201, et seq. Plaintiffs then filed an amended complaint, including a new claim on behalf of Virginia Fugate, alleging Defendants failed to comply with the overtime pay provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 621 et seq., by misclassifying her as exempt.

Defendants have now filed separate motions for summary judgment as to Virginia Fugate and Charlene Wind. Defendants argue that Plaintiffs' claims are barred for failing to file timely EEOC charges of discrimination and also because Plaintiffs' claims fail on their merits. Defendants further argue that Fugate's FLSA claim is untimely and without merit. The parties have also filed motions to strike evidence relied on during the summary judgment briefing.

DISCUSSION

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that

*might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Fugate and Wind's Employment at Dollar General

Dollar General is a retailer of basic consumable goods. Dollar General stores operate under the supervision of a Store Manager, who is the highest level of supervisory personnel, and only exempt, salaried employee of the store. (Hubbs dep. pp. 24-26). The stores are usually staffed with an Assistant Store Manager, a Lead Sales Associate, and multiple store Sales Associates. (Hubbs dep. pp. 24-26). Store Managers report to a District Manager. (Hubbs dep. pp. 24-26; Def. Response to Pl. Request for Admission No. 22). Dolgencorp, LLC, is a wholly owned

subsidiary of Dollar General.

In 2001, Fugate began working, as what she describes as a "stocker," at Dollar General's store in New Carlisle, Indiana. (Fugate dep. pp. 9, 15-16). In 2003, Fugate became a clerk who could run the cash register, and was then promoted to Lead Sales Associate. (Fugate dep. p. 20). In 2004, when Fugate was 45 or 46 years old, she was promoted to Store Manager of the New Carlisle store. (Fugate dep. pp. 9, 24-25). The District Manager at this time was Tara Hullinger. In 2005, Charlene Wind was hired to work at Dollar General's store in New Carlisle, Indiana as an hourly sales associate. (Wind dep. pp. 11, 14-15). When she was hired, she reported to the store manager, Virginia Fugate. (Wind dep. 16).

In 2006, the store was realigned to a new district and Maude Neely became Fugate's District Manager. (Fugate dep. pp. 32-33, 41; Neely dep. pp. 17, 25, 53). Fugate later recommended Wind for the position of Assistant Store Manager and Neely agreed with Fugate's recommendation. (Fugate dep. pp 107-108; Neely dep. p. 239). In November 2007, Wind was promoted to the position of Assistant Store Manager. (Wind dep. p. 33). At the time, Wind was 62 years old. (Wind dep. pp 5, 33).

On November 25, 2008, Fugate resigned her employment, telling Neely that she could not take "the way [Neely] kept on me and kept on me" concerning her need to maintain store standards. (Fugate

dep. pp. 91-101). Later that day, Wind received a telephone call from Fugate's husband informing her that Fugate had just resigned her employment with Dollar General. (Wind dep. p. 55). Wind left home and went to the store. (Wind dep. p. 55). When Wind arrived, Neely informed her that Amanda Gunther was going to be the new Store Manager. In response, Wind stated "Okay, fine. You want that, then here's my keys." (Wind dep. pp. 62, 66).

According to Wind, while employed at Dollar General, she was being treated differently because of her age. (Wind dep. p. 76). Also, Fugate knew to go to the EEOC for workplace discrimination claims because of a notice posted at her former Dollar General store during her employment. (Fugate dep. p. 193).

About one month before filing the charge of discrimination with the EEOC, Wind's husband suggested she do so. (Wind dep. pp. 75-76). And, prior to the expiration of 180 days after her employment ended with Dollar General, Wind and Fugate "talked about the pros and cons of filing a charge." (Wind decl. ¶ 41). For her part, around May 20 or 21, 2009, Fugate spoke with someone from the South Bend Human Rights Commission ("SBHRC") about the alleged discrimination she suffered at Dollar General, but Fugate was "hesitant to file any kind of charge" at that time. (Fugate decl. ¶ 107). It was not until after Fugate later spoke with Wind did she call and make an appointment to meet with someone from the SBHRC. (Fugate decl. ¶ 108; Wind decl. ¶ 41). The appointment was

scheduled for May 28, 2009.

On May 28, 2009, Wind and Fugate went to the EEOC for the first time, completed an intake questionnaire, and signed a Charge of Discrimination. (Wind dep. pp. 74-75, Ex. 3; Fugate dep. pp. 192-193, 196-97, Exs. 41, 44).

### Plaintiffs' ADEA claims are barred by their failure to file timely EEOC charges

Both parties recognize that, in Indiana, EEOC charges must be filed within 180 days of the alleged age discrimination. *EEOC v. North Gibson Sch. Corp.*, 266 F.3d 607, 617 (7th Cir. 2001). Fugate and Wind admit that they filed their charge of discrimination two days after the 180 limit expired. Nonetheless, they argue two reasons why their claims are not time barred. First, they assert Defendants waived the right to challenge the timeliness of the filing of the EEOC charge by not raising that affirmative defense in the amended answer. And, further, Plaintiffs argue that their filing should be deemed timely based on equitable tolling.

#### Dollar General did not waive its right to challenge the timeliness of Plaintiffs' EEOC charge of discrimination.

Plaintiffs argue that Defendants waived their right to assert that the EEOC charges were not timely filed because Defendants failed to plead an affirmative defense based on the statute of limitations in the Amended Answer. It is true that filing a timely

charge of discrimination with the EEOC is subject to waiver. *Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 393 (1982). And, it is also true that typically a limitations defense must be raised as an affirmative defense in the pleadings or it may be deemed waived. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008). In fact, Federal Rule of Civil Procedure 8(c) requires that a defendant, in his responsive pleading, raise all affirmative defenses that will defeat the allegations in the complaint. So, it must be determined if Defendants did, in fact, waive their right to challenge the timeliness of Plaintiffs' EEOC charge.

As Plaintiffs point out, nowhere in Defendants' amended answer is the timeliness of the EEOC charge raised. However, that is not the end of the story. The Fifteenth Affirmative Defense contained in the original answer, provided:

> To the extent Plaintiffs' claims encompass allegations beyond the scope of Plaintiffs' Charges of Discrimination, Plaintiffs' claims are barred in whole or in part by the relevant statute of limitations and/or failure to exhaust administrative remedies or otherwise comply with the statutory and administrative prerequisites for all claims they are asserting in this complaint.

(DE# 13).

In written discovery, Defendants were asked about this affirmative defense, and they provided:

> Plaintiffs failed to file a Charge of Discrimination with the EEOC within 180 days following any incident of age discrimination they allege. In particular, Plaintiffs' employment ended on November 25, 2008, but they did not go to the EEOC until May 28, 2009.

(Ans. to Int. No. 12).

Subsequently, Plaintiffs filed an amended complaint in order to add Fugate's FLSA claim. In their answer to the amended complaint, Defendants omitted the previously mentioned affirmative defense. Upon realizing this omission, Defendant's counsel wrote to Plaintiff's counsel:

> Jay,
>
> In reviewing our answer to plaintiff's amended complaint, we noticed that certain affirmative defenses which appeared in our original answer inadvertently were omitted. (Obviously we intend to carry over all the original defenses and add any additional defenses newly made relevant and necessary by your client's FLSA amendment) . . . Because the court, having allowed Plaintiff's late-filed amended complaint, will certainly grant a reciprocal request by Defendant essentially to fix an inadvertent, clerical omission, we are hopeful you will not require the parties and court to expend the time and expense of a formal amendment process. Please advise. Thanks.

(Ex. 2).

In response, Plaintiffs' counsel agreed, stating, "Yes, we will consent to the addition of the previously filed affirmative defenses." (Ex. 2). However, Plaintiffs' counsel has now apparently had a change of heart.

The purpose of requiring a defendant to raise an affirmative defense in his responsive pleading is to "avoid surprise and undue prejudice to the plaintiff by providing her notice" and an opportunity to respond. *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). As such, parties have been able to add

affirmative defenses after the pleading stage when the plaintiff is not prejudiced by the late notice. *Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005).

There is no question that Plaintiffs were aware of Defendants' affirmative defense of failure to file a timely EEOC charge. It was raised in the original answer and its inadvertent omission from the amended answer was discussed amongst counsel. The only reason Dollar General did not seek to amend its amended answer in order to include the inadvertently omitted affirmative defense was that Plaintiffs' counsel assured Dollar General that such an amendment was unnecessary. Plaintiffs have not made any showing that they were prejudiced by the affirmative defense not being included in the amended answer. In fact, the undisputed evidence shows that Plaintiffs were aware that Defendants intended to assert that affirmative defense from the onset of this litigation. Therefore, the Court will allow Defendants to assert the affirmative defense and will consider the defense on its merits.

<u>Plaintiffs are not entitled to equitable tolling</u>

It is undisputed that Plaintiffs filed untimely charges of discrimination with the EEOC. Nevertheless, they ask this Court to apply the doctrine of equitable tolling to excuse their untimeliness. Plaintiffs assert they should be afforded equitable tolling because:

> In this case, Fugate and Wind were laypersons doing their best to protect their statutory rights. In fact, they did contact the South Bend Human Rights Commission for that purpose prior to the expiration of the 180-day period. They were not aware of the specific deadline, although generally aware that claims can expire. Through no fault of theirs, the SBHRC scheduled their appointment for the following week-just two days after the time limit expired. They filed their Charge of Discrimination that day.

(DE# 63, p. 5).

"In discrimination cases equitable tolling extends filing deadlines in only three circumstances: when a plaintiff exercising due diligence cannot within the statutory period obtain information necessary to realize that she has a claim . . .; when a plaintiff makes a good-faith error such as timely filing in the wrong court . . .; or when the defendant prevents a plaintiff from filing within the statutory period[.]" *Porter v. New Age Services Corp.*, 463 Fed. Appx. 582 (7th Cir. 2012)(citing *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010); *Hentosh v. Herman M. Finch Univ. of Health Sci./The Chicago Med. Sch.*, 167 F.3d 1170, 1175 (7th Cir. 1999); *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

The doctrine of equitable tolling does not apply in this case. Rather than attempting to explain how the facts of this case fit into any of the three recognized categories of equitable tolling, Plaintiffs focus merely on the fact that they were laypersons and the EEOC scheduled an appointment with them two days after the time

limit expired.  This is not enough to trigger the equitable tolling doctrine.

Neither Plaintiff has argued that she could not timely determine facts upon which her claim was based.  This is not surprising as they both admitted they believed they were being treated differently because of age while employed at Dollar General.  (Fugate dep. p. 203; Wind dep. p. 76).  Moreover, there are no designated facts to support that either Plaintiff exercised due diligence in pursuing her rights.  Both Plaintiffs knew that they needed to file a charge of discrimination.  They just failed to do it in a timely manner.  Finally, Plaintiffs do not assert that the SBHRC in anyway lulled or misled them into believing that they had more than 180 days to actually file their charges of discrimination.  Moreover, there is nothing in the record to support the notion that making an appointment with the SBHRC was a prerequisite to filing a charge of discrimination.

Ultimately, it was Plaintiffs' own indecisiveness that led to their filing untimely charges of discrimination.  Based upon the facts of this case, equitable tolling is not available to deem the charges of discrimination timely.  Because Plaintiffs filed untimely charges of discrimination, their ADEA claims are dismissed.

### Fugate's FLSA claim is untimely because she has failed to present evidence that Dollar General acted willfully

Dollar General classifies all store managers as exempt from the FLSA on a company-wide basis rather than making an individualized decision for each store manager. This came as a result of an individualized study of its store managers that began in 1995.

Prior to 1995, all store managers at Dollar General were hourly, non-exempt employees. (Rice Dep. p. 70). In 1995, Dollar General began the process of asking each store manager about their job duties and time spent doing various activities, asking store managers to certify their own understanding that management was their primary duty and, where it appeared a particular store manager did not view management as his primary duty, providing additional training to emphasize the manner in which he was expected to carry out the responsibilities as a store manager. (Rice dep. pp. 69-76, 82-87, 97-128).

In 1996, Dollar General began converting store managers to exempt status, on a manager by manager basis. Before any manager was converted, he or she had to complete an "Exemption Certificate" in which the manager certified that "I spend more than 50% of my time each week in 'management/supervisory' functions." Rice Ex. 7 (Ex. 43) at DEF003566. In February 1996, Dollar General issued a statement to its District Managers stating "we feel most of our store managers can meet the requirements allowing them to be

converted to salaried exempt status." 1995 Survey, Rice Exhibit 7 (Ex. 43) at DEF003583. Those store managers that did not qualify to be converted to salaried exempt were given additional training and asked to complete another survey, similar to the first. If they still could not certify that they spent more than 50% of their time on management, they were not converted to exempt; they remained hourly. (Rice dep. pp. 125-127). Dollar General had some store managers who were hourly until 2002 or 2003. (Rice dep. p. 127). Since 2002 or 2003 Dollar General has categorized all store managers as salaried exempt and has not since revisited its decision.

Fugate argues that Dollar General misclassified her under the "executive exemption" of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 201 et seq. The FLSA specifically exempts certain employees from its requirement that employees be paid overtime, including "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a). An employee qualifies for this exemption if: (1) she is paid a salary of $455 or more per week; (2) her job's "primary duty" is management; (3) her job includes the customary and regular direction of the work of two or more other employees; and (4) she has the authority to hire or fire other employees or her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R.

-14-

§ 541.100 (2005).

For purposes of this section, the Court assumes Fugate was erroneously classified under the "executive exemption." At issue is whether Fugate timely filed her action under the FLSA. Ordinarily, FLSA claims must be commenced within two years after the cause of action accrued. 29 U.S.C. § 255(a). However, the statute of limitations is extended to three years if the cause of action arises out of a willful violation of the FLSA. 29 U.S.C. § 255(a). It is undisputed that Fugate filed her FLSA claim more than two years, but less than three years, after alleged cause of action accrued. Thus, Fugate must show that Defendants willfully violated the FLSA. *McDonald v. Village of Palestine*, No. 08 C 5435, 2012 WL 2590492, *3 (N.D. Ill. June 29, 2012)(noting that the burden of proof to establish a willful violation lies with the FLSA plaintiff).

A violation is deemed willful under the FLSA if the "employer either knew or showed reckless disregard" for whether its conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *EEOC v. Madison Cmty. Unit Sen. Dist.*, 818 F.2d 577, 585 (7th Cir. 1987). "[A]n employer's mere negligence or a good faith – but incorrect – belief that they were in compliance with the FLSA, are not sufficient to rise to the level of a willful violation." *Difilipino v. Barclays Capital, Inc.*, 552 F.Supp.2d 417, 425 (S.D.N.Y. 2008). Whether a violation of the FLSA is

willful is a question of fact. *Pignataro v. Port Authority of New York and New Jersey*, 593 F.3d 265, 273 (3d Cir. 2010). However, a plaintiff is required to present sufficient evidence that her employer willfully violated FLSA's overtime requirements; otherwise, summary judgment is appropriate. *Id.*(*affirming* district court's summary judgment finding that employer's violation of the FLSA was not willful).

Fugate contends that Dollar General willfully violated the FLSA by "intentionally ke[eping] its head in the sand and ignor[ing] all evidence that Virginia should have been classified as a non-exempt employee." (DE# 63, p. 24). In support of this contention, Fugate pursues two separate arguments. Fugate first argues that Dollar General willfully violated the FLSA by not classifying store managers on an individualized basis. Second, Fugate asserts that Dollar general had constructive knowledge that Fugate worked long hours and spend most of her time doing manual labor.

To start, Fugate believes Dollar General knew or should have known that an individualized inquiry for store managers was required. Fugate complains that Dollar General has never done an FLSA compliance audit to review whether the exempt classification continues to apply to all of the store managers. Fugate also points out that many store managers have brought suit alleging FLSA violations in the past few years, which should have made Dollar

-16-

General aware of the contentious nature of their classifying store managers as salaried exempt.

Despite Fugate's dislike of Dollar General's classification of store managers, there is no evidence that Dollar General knew or recklessly disregarded the FLSA in classifying her (or any other managers) as exempt. Indeed, Dollar General decided to convert store managers to salaried exempt only after engaging in a lengthy, individualized process. Dollar General's failure to reassess its classification cannot be seen as willful noncompliance with the FLSA. While there have been lawsuits against Dollar General based on its classification of store managers, not a single case has been cited to the Court showing that Dollar General was ever found to have misclassified a store manager, either willfully or otherwise.[1] The mere filing of lawsuits cannot be deemed sufficient to put Dollar General on notice that its policy is violative of the FLSA. There has been no other relevant evidence presented that would put Dollar General on notice of a need to revisit its classification of store managers.[2] If Dollar General ultimately turned out to be incorrect on its reliance of the 1995 study, and was found to have misclassified Fugate, that misclassification would be a result of

---

[1] At most, some courts have found that a material fact existed for a jury to decide.

[2] Although Fugate has mentioned and attempted to rely on a 2004 Dollar General Survey, the Court has already determined that the survey is not relevant regarding her FLSA claim. The court's conclusion wasn't surprising since, even after being given the opportunity, Fugate failed to articulate how the survey was relevant to her FLSA claim. (DE# 54, p. 3).

negligence, at most.

Second, Fugate argues that Dollar General had "constructive knowledge" that Fugate worked very long hours and spent much of her time doing manual labor. However, this argument is based on little more than Maude Neely telling Fugate that she should not work so many hours at the store and to spend more time in the office and less time on the floor because that was "what managers do." These scant facts are insufficient to give Dollar General constructive knowledge that Fugate should not be classified as salaried exempt. Not surprisingly, Fugate fails to cite to any legal authority that would support her argument. In fact, Fugate has not developed this argument in any meaningful way other than by merely raising it.

Ultimately, as the plaintiff, Fugate bears the burden to show that a triable issue exists with regards to Dollar General willfully misclassifying her as "executive exempt." Fugate has not met that burden. Therefore, she can only recover for FLSA claims that commenced within two years after the cause of action accrued. Because she filed her claims after two years, her FLSA claims are time-barred.

CONCLUSION

For the reasons set forth below, Defendants' motions for summary judgment (DE## 57, 60) are **GRANTED**. Both motions to strike (DE## 73, 78) are **DENIED as moot**. Accordingly, this case is dismissed.

**DATED:  October 23, 2012**         /s/RUDY LOZANO, Judge
                                     **United States District Court**